DISSENT
NYGAARD, J.,

dissenting.

I respectfully dissent and would dismiss this appeal for lack of jurisdiction. I agree with the majority that we do not have jurisdiction to consider the merits of the decision of the District Court of the Virgin Islands, Appellate Division. I disagree, however, that we may consider whether the Appellate Division had jurisdiction to hear the interlocutory appeal. The majority asserts that its resolution of this issue is “clear” and compelled by the “indistinguishable precedent” of Government of Virgin Islands v. Blake, 37 V.I. 385, 118 F.3d 972 (3d Cir. 1997). Maj. Op. at *9.1 agree the issue is clear, but conclude that the precedent of Blake is first, quite distinguishable, and moreover, not germane to our decision.
The majority insists that we should treat appeals from the Appellate Division “no differently than appeals taken from any other federal district court.” Maj. Op. at *6. While I agree in general, I do not believe this means we can simply be blind to the differences. The majority’s decision effectively grants an appeal as of right to question an appellate court’s jurisdiction whenever it makes an interlocutory ruling. The *759 procedural equivalent is not our routine review of a decision by a typical district court, but review by some hypothetical higher court of our jurisdiction every time we take an interlocutory appeal.
This type of review is wisely not found elsewhere in the federal system, and should not exist here. Under the majority’s holding, we pile an extra layer of interlocutory appellate review solely onto cases that stem from the Virgin Islands, without explaining why this extra layer is necessary — and why the delay it engenders is justified. I find the extra layer unnecessary and the delay unjustified.
The majority correctly concludes that the issue of the Appellate Division’s jurisdiction is not reviewable as an ordinary final decision. It also uses the correct test for determining whether, nevertheless, we may pretend it is a final decision and review it under the collateral order doctrine. It is the manner in which the majority applies this test where they and I part company.
At the outset, I think it important to emphasize what the majority only notes in passing — that the collateral order doctrine is meant to provide a “narrow exception” to the general rule that permits appellate review only of truly final orders. See Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 868, 128 L. Ed. 2d 842, 114 S. Ct. 1992 (1994). This exception is to be made only when required to preserve “a healthy legal system,” and should “never be allowed to swallow the general rule.” Id. at 867-68 (internal citation and quotations omitted). Thus, the three prongs of the collateral order doctrine are “stringent,” and each of them must be met in order for a decision to be reviewable. Id. at 868. With this in mind, it seems clear that in this case the requirements of the second and third prongs have not been met, and we therefore may not review the Appellate Division’s decision as to its own jurisdiction.
In addition to being separate from the merits of the case, as this jurisdictional question admittedly is, the second prong also requires that the issue be sufficiently “important.” Discussing the meaning of “important,” the United States Supreme Court has explained that it involves an examination of the “value of the interests that would be lost through rigorous application of a final judgment requirement.” Digital Equip. Corp., 511 U.S. at 878-79. Similarly, we have required a showing of the “impairment of some institutionally significant status or relationship” presenting the “danger of denying justice.” In re Ford Motor Co., 110 F.3d 954, 960 (3d Cir. 1997). To qualify as “important,” *760 these interests must also outweigh the “inefficiencies flowing from interlocutory appeal.” Id.
It is difficult for me to see how we can conclude that an extra layer of appellate review, of a kind that does not exist anywhere else in the federal system, qualifies as “important” under this standard. When this Court takes jurisdiction over an interlocutory appeal from a typical district court’s proceedings, our decision to do so is not subject to automatic review, and yet we do not find that this deprivation presents the “danger of denying justice.” It is incongruous, and more than a bit patronizing, to conclude that the interests of justice require that we take an interlocutory appeal to second-guess the jurisdictional conclusions of the Appellate Division when it is sitting in the same posture.
In distinguishing holdings that find issues of subject-matter jurisdiction ineligible for interlocutory review, the majority points out that this case is different because it presents a question of appellate, not original, jurisdiction.[15] The majority does not, however, indicate why this distinction weighs in favor of review. Nor does the majority explain how the interests of justice implicated by an interlocutory jurisdictional issue are so weighty that they overcome the “inefficiencies flowing from interlocutory appeal.” Notably, the majority actually has very little to say about the “importance” of reviewing the jurisdictional issue, blurring its discussion of this condition with its insistence that the order is “procedurally unreviewable,” a factor that is properly evaluated under the third prong. Maj. Op. at *10.
In my view, this third requirement has also not been fulfilled. I fail to see why the question of interlocutory appellate jurisdiction as presented in this case is “effectively unreviewable on appeal from a final judgment.” Ford Motor Co., 110 F.3d at 958. As the Supreme Court notes, most interlocutory orders are “only imperfectly reparable by appellate reversal,” and if this prong were to be interpreted too broadly, it would render it meaningless. Digital Equip. Corp., 511 U.S. at 872. “A fully litigated case can no more be untried than the law’s proverbial bell can be unrung, and almost every pretrial or trial order might be called *761 ‘effectively unreviewable’ in the sense that relief from error can never extend to rewriting history.” Id.
It is indeed likely that the issue of the Appellate Division’s interlocutory appellate jurisdiction will be made irrelevant by further proceedings. If the Appellants reach a plea agreement or are acquitted, for example, then the question would be moot. In the larger context of a murder trial, the issue may be rendered immaterial. But these possibilities only indicate that our consideration of the issue at this point may well be a waste of time and resources.
If the Appellants are convicted, however, and the decision of the Appellate Division is material to the outcome of the trial, I see no reason why we could not then consider whether the Appellate Division had jurisdiction to render its decision. In fact, it seems that the issue could be raised rather straightforwardly upon appeal, without requiring, as the majority suggests, “the most convoluted and improbable of hypotheticals.” Maj. Op. at *11. True, if we were to reverse, at that point we could not rewrite history and pretend that the Appellate Division had never rendered its interlocutory ruling, but as the Supreme Court has emphasized, effective reviewability of a decision does not require that we be able to unring the “law’s proverbial bell.” Id.
It is in regard to reviewability that this case is most easily distinguishable from Blake. 37 V.I. 385, 118 F.3d 972. In Blake, the Appellate Division had found that it did not have jurisdiction to consider the government’s interlocutory appeal, and it was the government, not the defendants, who sought to appeal that ruling to us. Id. at 974. This denial of jurisdiction could not have been effectively reviewed after final judgment, especially because it is unlikely the government would have been able to appeal at all had it lost and the trial resulted in an acquittal. In contrast, here Appellants would have an automatic right to appeal upon conviction.
These distinctions also make our finding that the interlocutory issue was sufficiently “important” more palatable in the Blake case, since the denial of jurisdiction there meant the challenged order would not be reviewed by any court, and a miscarriage of justice was therefore more likely to result. In contrast, in a case such as this in which the Appellate Division took jurisdiction, the underlying issue has already been reviewed and decided by an appellate court.
*762 This case implicates all of the interests that justify the existence of the final judgment rule, and illustrates why exceptions to this rule should be few. As the Supreme Court explained:
An interlocutory appeal can make it more difficult for trial judges to do their basic job — supervising trial proceedings. It can threaten those proceedings with delay, adding costs and diminishing coherence. It also risks additional, and unnecessary, appellate court work ... when it brings them appeals that, had the trial simply proceeded, would have turned out to be unnecessary.
Johnson v. Jones, 515 U.S. 304, 309, 132 L. Ed. 2d 238, 115 S. Ct. 2151 (1995).
Fortunately, the scope of the majority’s decision is limited to the unique appellate position of the courts of the Virgin Islands, but even within this narrow arena today’s holding seems certain to encourage more unnecessary delay while this Court wades through more unnecessary appeals. With this holding, every ruling by the Appellate Division becomes appealable to this Court, since every such ruling must necessarily contain at least an implicit finding of jurisdiction.
To see the harm in this decision, we need look no farther than the case now before us. The trial of Appellants for a brutal 1999 murder was set to begin in September 2001, when the case was brought to a grinding halt by the government’s appeal on the eve of trial. Memories of witnesses have surely faded and evidence gone stale as the case has wended its way through two appellate courts, producing what will be at least a three-year delay in trial. There is no doubt that when this trial is eventually held, it will be less coherent than it would have been three or more years earlier, and less likely to achieve a just result. It is unfortunate that there has been such a delay in this case; we should not encourage its recurrence.
The government’s original interlocutory appeal was brought under a statute passed by the Virgin Islands legislature, which made a measured decision that the interests of justice warrant the delay caused by allowing interlocutory appeals in a few specified instances. Now, in making any such decision, the local legislature must weigh the interests of justice against far more delay, since this Court must now intrude on every interlocutory appeal. From now on, every interlocutory appeal allowed by statute will come stapled to a right to appeal to us the Appellate Division’s decision to take the interlocutory appeal. This extra layer is *763 not only unnecessary, but also conveys an unjustified lack of confidence in the decisions of the Appellate Division, and creates a further delay that can only serve to jeopardize the ultimate attainment of justice at trial.

 It is worth noting that earlier in its opinion the majority observed the necessity of treating appeals from the Appellate Division no differently from appeals from any other district court, but when the occasion arises, it is quick to point out that they really are different, because they involve questions of appellate, and not original, jurisdiction.